1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CLYDETTE WYNNE, et al.,                    CASE NO. CV F 07-1573 LJO DLB

12              Plaintiffs,                     **ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
13       vs.                                    (Doc. 13)

14   CITY OF FRESNO, et al.,

15              Defendants.
                                        /
16

17                          **INTRODUCTION**

18          Defendants City of Fresno ("City") and City police officers and police chief seek F.R.Civ.P.

19   12(b)(6) dismissal of plaintiffs' excessive force and negligent hiring claims or an alternative F.R.Civ.P.

20   12(e) more definite statement of plaintiffs' claims.  Plaintiffs contend that their claims are plead

21   sufficiently or may be amended.  This Court considered defendants' alternative F.R.Civ.P. 12(b)(6) and

22   F.R.Civ.P. 12(e) motions on the record and VACATES the March 17, 2008 hearing, pursuant to Local

23   Rule 78-230(h).  For the reasons discussed below, this Court GRANTS in part defendants' requested

24   F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 12(e) relief.

25                          **BACKGROUND**

26                          **The Parties**

27          Plaintiff Clydette Wynne ("Ms. Wynne") is the mother and guardian ad litem for minor plaintiffs

28   Alexis Martin ("Alexis") and Charles Williams ("Charles").  Plaintiff Rosie Sanders ("Ms. Sanders")

                                        1

1   is an adult.[1]

2        Defendants comprise the City, City Police Department[2] Chief Jerry Dyer ("Chief Dyer") and 11

3   Department police officers, including Officer Joel Santos ("Officer Santos").[3]

4   **Vehicle Stop**[4]

5        In July 2006, Ms. Wynne's vehicle was reported as stolen, was recovered a few days later by the

6   Department, and was returned to Ms. Wynne.  Plaintiffs are unaware whether the Department continued

7   to list Ms. Wynne's vehicle as stolen in that the Department had not cleared its stolen status from its

8   database or whether an agency within the Department had updated information which could have been

9   retrieved by Department officers, including Officer Santos.

10        On August 18, 2006, Officer Santos stopped Ms. Wynne, then seven months pregnant, in her

11   vehicle.  Alexis, then age 5, and  Charles, then age 3, and Ms. Sanders were passengers in Ms. Wynne's

12   vehicle.  Ms. Wynne reached for and obtained her vehicle registration, insurance card and driver's

13   license.  Officer Santos did not approach Ms. Wynne's car, raised his weapon from behind his police

14   car, and instructed Ms. Wynne to put her arms out the window.  Ms. Wynne complied and put her

15   vehicle registration, insurance card and driver's license on the dash board.  Eleven officers responded

16   to Officer Santos' backup call.

17        Ms. Wynne complied with Officer Santos' gunpoint demands to exit her vehicle  and walk

18   backwards.  Ms. Wynne used a walker because of hip dislocation from her pregnancy.  A female

19   Hispanic officer in her mid-30s handcuffed Ms. Wynne, pulled her backwards, and placed her in a police

20   car toward which other officers approached with drawn guns.  No officer asked for vehicle registration

21   or other documents.  No officer examined Ms. Wynne's documents although she stated that such

22   documents were on the dash board and that the vehicle had been stolen and returned.

23

24       [1]    Ms. Wynne, Ms. Sanders, Charles and Alexis are black and will be referred to collectively as "plaintiffs."

25       [2]    The City Police Department will be referred to as the "Department."

26       [3]    The 11 defendant police officers will be referred to collectively as "defendant officers."  The City, Chief
27   Dyer and the defendant officers will be referred to collectively as "defendants."

28       [4]    The following factual recitation of the subject vehicle stop is derived generally from plaintiffs' first
amended complaint ("FAC"), the subject of defendants' challenges.

1    At one point, a male Caucasian officer in his mid-30s held a gun to Ms. Sanders' head.  Ms.

2  Wynne heard officers tell Ms. Sanders, Charles and Alexis not to move or the officers would shoot.

3    After an hour and 45-minute detention, defendant officers learned that Ms. Wynne's vehicle was

4  no longer stolen and that Ms. Wynne was the vehicle's owner.  Defendant officers released plaintiffs.

5    Plaintiffs allege on information and belief that: (1) when Officer Santos contacted Department

6  dispatch or used his on board computer, he was advised to confirm with a Department agency the status

7  of Ms. Wynne's vehicle; and (2) Officer Santos did not follow directions to confirm by phone the

8  vehicle's status.  If Officer Santos had done so, he would have learned that the Department had

9  recovered the vehicle and had returned it to Ms. Wynne.

10    At the time of the incident, Ms. Wynne went into premature labor and was hospitalized.  Her

11  daughter was born three to four weeks premature.

12    Plaintiffs claim they cannot "identify which officers were involved in any specific act without

13  the opportunity to place a name and a face together" but will seek leave to amend their complaint after

14  discovery reveals the officers' identities.  Ms. Sanders claims that defendant officers refused her request

15  for their names and told her to get a police report.

16                              **Plaintiffs' Claims**

17    The FAC alleges:

18    1.    A first cause of action against the defendant officers in their individual capacities that

19          they used excessive force to detain plaintiffs and to conduct their investigation to violate

20          the Fourth and Fourteenth Amendments of the U.S. Constitution, Article 1, Sections 7

21          and 13 of the California Constitution, 42 U.S.C. §§ 1983 ("section 1983") and 1988, and

22          California Civil Code sections 52 and 52.1;

23    2.    A second cause of action that the City and Chief Dyer negligently hired, trained and

24          supervised the defendant officers to deprive plaintiffs' rights under the Fourth and

25          Fourteenth Amendments of the U.S. Constitution and protected by section 1983, 42

26          U.S.C. § 1988 and California Civil Code sections 52 and 52.1;

27    3.    A third false arrest, false imprisonment and excessive force cause of action against all

28          defendants in their official capacities that plaintiffs' "detention was conducted with

3

1  excessive force in violation of Plaintiffs' rights under the U.S. and California

2  Constitutions"; and

3       4.    A fourth cause of action against all defendants in their individual and official capacities

4            that they "deprived plaintiffs of their right to be secure in their person against

5            unreasonable seizure of their person in violation of article 1 sections 7 and 13 of the

6            California Constitution, and California Civil Code sections 52, 52.1."

7  Plaintiffs seek to recover emotional distress and punitive damages.

8                                    **DISCUSSION**

9                   **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

10      Defendants seek to dismiss plaintiffs' claims on various substantive grounds discussed below.

11 A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the

12 complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any

13 evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

14 a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

15 claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

16 Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

17 a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

18 theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

19 Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff

20 can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*,

21 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

22      In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most

23 favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

24 whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty

25 Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  "However, conclusory allegations of law and

26 unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d

27 696, 699 (9th Cir. 1998).  A court need not permit an attempt to amend a complaint if "it determines that

28 the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v.

4

1   *N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

2                    **F.R.Civ.P. 12(e) Motion For More Definite Statement Standards**

3        Defendants pursue an alternative F.R.Civ.P. 12(e) motion which permits a party to seek "a more

4   definite statement of a pleading to which a responsive pleading is allowed but which is so vague or

5   ambiguous that the party cannot reasonably prepare a response." A motion for a more definite statement

6   is proper if "defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*,

7   525 F.Supp. 940, 949 (E.D. Cal. 1981); *see Boxall v. Sequoia Union High School District*, 464 F.Supp.

8   1104, 1114 (N.D. Cal. 1979). A F.R.Civ.P. 12(e) motion is designed to strike unintelligibility rather

9   than lack of detail. *See Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 580 (D. Nev. 1984); *Nelson*

10  *v. Quimby Island Reclamation Dist.*, 491 F.Supp. 1364, 1385 (N.D. Cal. 1980). A F.R.Civ.P. 12(e)

11  motion should be denied if the pleading provides a "short and plain statement" of the claim showing that

12  the pleader is entitled to relief. *Virgen v. Mae*, 2007 WL 1521553, *2 (E.D. Cal. 2007) (citing

13  F.R.Civ.P. 8(a)(2)).

14       With these standards in mind, this Court turns to defendants' challenges to plaintiffs' claims.

15                 **Merits Of First Cause Of Action Against Defendant Officers**

16                              ***Fourth Amendment Claims***

17       In their first cause of action against the defendant officers in their individual capacities, plaintiffs

18  allege that there are questions whether Ms. Wynne's vehicle was listed as stolen because the Department

19  had not cleared its stolen status or whether a Department agency had updated information which Officer

20  Santos could have learned had he telephoned the agency. The cause of action later alleges that had

21  Officer Santos contacted the Department agency, he would have learned that the Department had

22  recovered and returned Ms. Wynne's vehicle.

23       Defendants argue that the cause of action is vague and appears to challenge defendant officers'

24  actions after the stop, not the stop itself. Defendants argue that Officer Santos was entitled to rely on

25  dispatch information to detain and even arrest plaintiffs until he completed his investigation. Defendants

26  argue that the hour and 45-minute detention alone is insufficient to indicate use of excessive or

27  unreasonable force. Defendants contend that Officer Santos' "verbal force" to gain Ms. Wynne's

28  compliance was reasonable.

1    Plaintiffs point out that during the one hour 45-minute detention, no defendant officer asked for
2    Ms. Wynne's vehicle registration or driver's licence, which were readily available when defendant
3    officers approached her vehicle with guns drawn.  Ms. Wynne equates her gunpoint handcuffed status
4    to an arrest.  Plaintiffs argue that the Fourth Amendment claims are sufficient to plead use of excessive
5    force and absence of probable cause for arrest.

6        There is "no bright line rule for determining when an investigatory stop crosses the line and
7    becomes an arrest."  *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988).  The point of an
8    investigatory stop "is to allow police to *investigate*."  *Gallegos v. City of Los Angeles*, 308 F.3d 987,
9    991 (9th Cir. 2002) (italics in original). Whether a police detention is an arrest or an investigatory stop
10   is a fact-specific inquiry, *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996), guided by the
11   general Fourth Amendment requirement of reasonableness, *Texas v. Brown*, 460 U.S. 730, 739, 103
12   S.Ct. 1535 (1983).  Such inquiry requires a court to consider "all the circumstances surrounding the
13   encounter" between the individual and police,  *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382
14   (1991), "by evaluating not only how intrusive the stop was, but also whether the methods used [by
15   police] were reasonable *given the specific circumstances*," *Washington*, 98 F.3d at 1185 (italics in
16   original).

17       The facts of a detention must be viewed in the context of the totality of circumstances in that "the
18   scope of the intrusion permitted [by the Fourth Amendment] will vary to some extent with the particular
19   facts and circumstances of each case."  *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (plurality
20   opinion); *see Gallegos*, 308 F.3d at 991.  A court looks at the situation as a whole and does not isolate
21   each fact "in a vacuum." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995); *see Gallegos*,
22   308 F.3d at 991.

23       "The 'reasonableness' and hence constitutionality of a warrantless arrest is determined by the
24   existence of probable cause."  *Barry*, 902 F.2d 770, 772 (9th Cir. 1990). The "question of whether a
25   reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a
26   search or an arrest is 'an essentially legal question' that should be determined by the district court at the
27   earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)
28   (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)).

1    The "crucial inquiry" is whether there was "probable cause to make the arrest." *Barry*, 902 at

2    772; *see McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984). Whether an arrest is "constitutionally

3    valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause

4    to make it – whether at that moment the facts and circumstances within their knowledge and of which

5    they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that

6    the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct.

7    223 (1964). "Probable cause for a warrantless arrest arises when the facts and circumstances within the

8    officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed,

9    is committing, or is about to commit an offense.'" *Barry*, 902 F.2d at 773 (quoting *Michigan v.

10   DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979)).

11   A stolen vehicle report alone furnishes sufficient grounds to arrest the driver. *Rohde v. City of

12   Roseburg*, 137 F.3d 1142, 1144 (9th Cir.), *cert. denied*, 525 U.S. 817, 119 S.Ct. 54 (1998); *Lipton v.

13   United States*, 348 F.2d 591, 594 (9th Cir. 1965.) A "stolen vehicle report justifies the arrest of the driver

14   even if the report is later discovered to be erroneous." *Rohde*, 137 F.3d at 1144. "If an officer has

15   reliable information, such as a police report, indicating that the vehicle has been stolen, he thus has

16   probable cause to believe that the driver has committed the crime of either stealing the car or knowingly

17   operating a stolen car." *Rohde*, 137 F.3d at 1144.

18   Nonetheless, the Ninth Circuit has further explained:

19        In this nation, all people have a right to be free from the terrifying and
         humiliating experience of being pulled from their cars at gunpoint, handcuffed, or made
20       to lie face down on the pavement when insufficient reason for such intrusive police
         conduct exists.  The police may not employ such tactics *every time* they have an
21       "articulable basis" for thinking that someone may be a suspect in a crime.  The
         infringement on personal liberty resulting from so intrusive a type of investigatory stop
22       is simply too great.  Under ordinary circumstances, when the police have only reasonable
         suspicion to make an investigatory stop, drawing weapons and using handcuffs and other
23       restraints will violate the Fourth Amendment.

24   *Washington*, 98 F.3d at 1187.

25   Plaintiff's first cause of action alleges unlawful detention and excessive force claims.  The cause

26   of action alleges that "Defendant officers unlawfully detained and threatened plaintiffs" and "used

27   excessive force in detaining Plaintiffs and in conducting their investigation."   The cause of action

28   reflects plaintiffs' uncertainty as to the status the Department attributed to Ms. Wynne's vehicle and

7

1  whether updated information was available within the Department.  At this stage, plaintiffs are not

2  expected to know of such information, which is easily available to defendants and which plaintiffs are

3  able to learn during discovery.  Claimed vagueness will be cleared during discovery.  Factual questions

4  exist whether the methods used by the defendant officers were reasonable under the alleged

5  circumstances.  Defendants fail to support their challenge to plaintiffs' Fourth Amendment claims,

6  including those of Charles and Alexis who, according to the FAC, were subjected to gunpoint detention.

7  This Court DENIES dismissal of the first cause of action's Fourth Amendment claims against the

8  defendant officers.

9                              ***Fourteenth Amendment Claims***

10        The defendant officers note that although the first cause of action references a Fourteenth

11  Amendment violation, it lacks allegations of violations of substantive or procedural due process or equal

12  protection rights and facts to support a Fourteenth Amendment violation.  Plaintiffs respond that their

13  Fourteenth Amendment claims based on "treatment difference from those similarly situated or were

14  discriminated because of their race.  All the Plaintiffs are black."

15        A Fourteenth Amendment due process claim under section 1983 may address "substantive"

16  rights, including freedom from unreasonable searches and seizures, and "certain arbitrary, wrongful

17  government actions." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975 (1990).  "The concept of

18  'substantive due process,' semantically awkward as it may be, forbids the government from depriving

19  a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights

20  implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.

21  1998).  The substantive component of the Due Process Clause is violated by executive action only when

22  it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins*

23  *v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 1070 (1992).

24        A Fourteenth Amendment due process  claim under section 1983 may also address "procedural

25  rights" of "guarantee of a fair procedure" to address deprivation of a "life, liberty or property" interest

26  "*without due process of law.*" *Zinermon*, 494 U.S. at 125, 110 S.Ct. 975.  To state a procedural due

27  process claim, a plaintiff must allege: (1) a liberty or property interest protected by the Constitution; (2)

28  a deprivation of the interest by the government; and (3) lack of process. *Wright v. Riverland*, 219 F.3d

1    905, 913 (9th Cir. 2000).

2           "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny

3    to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

4    all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*,

5    473 U.S. 432, 439, 105 S.Ct. 3249 (1985). The "purpose of the equal protection clause of the Fourteenth

6    Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary

7    discrimination, whether occasioned by express terms of a statute or by its improper execution through

8    duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190

9    (1923).

10          A section 1983 plaintiff alleging an equal protection violation must prove: (1) the municipal

11   defendants treated them differently from others similarly situated; (2) the unequal treatment was based

12   on an impermissible classification; (3) the municipal defendants acted with discriminatory intent in

13   applying this classification; and (4) plaintiffs suffered injury as a result of the discriminatory

14   classification. *Moua v. City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004); *see Van Pool v. City*

15   *and County of San Francisco*, 752 F.Supp. 915, 927 (N.D.Cal.1990) (section 1983 plaintiff must prove

16   purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received

17   by others similarly situated," and that the treatment complained of was under color of state law). Equal

18   protection claims may be brought by a "'class of one,' where the plaintiff alleges that she has been

19   intentionally treated differently from others similarly situated and that there is no rational basis for the

20   difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).

21          Unlawful detention and excessive force claims are the thrust of the first cause of action. No

22   Fourteenth Amendment claim is apparent from the complaint. There are no facts for a procedural due

23   process or equal protection claim. Plaintiffs request leave to allege an equal protection claim that as

24   blacks, "they were treated differently than white women and/or children similarly situated." As such,

25   this Court DISMISSES with leave to amend the first cause of action's Fourteenth Amendment claims

26   against the defendant officers.

27   **Second Cause Of Action Against Officer Dyer In His Official Capacity**

28          The (second) negligent hiring, training, staffing and supervision cause of action is against the

9

1   City and Chief Dyer in his official capacity.  Since the cause of action names the City as a defendant,

2   Chief Dyer argues that he is a redundant defendant.

3       Official-capacity suits "generally represent only another way of pleading an action against an

4   entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

5   690, n. 55, 98 S.Ct. 2018 (1978).  Local government officials sued in their official capacities are

6   "persons" under section 1983 in cases where a local government would be suable in its own name.

7   *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018.  "For this reason, when both an officer and the local

8   government entity are named in a lawsuit and the officer is named in official capacity only, the officer

9   is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997)

10  (citing *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)).

11       "[I]t is no longer necessary or proper to name as a defendant a particular local government

12  officer acting in official capacity." *Luke*, 954 F.Supp. at 204.  As the district court in *Luke*, 954 F.Supp.

13  at 204, explained:

14      A plaintiff cannot elect which of the defendant formats to use. If both are named, it is
        proper upon request for the Court to dismiss the official-capacity officer, leaving the
15      local government entity as the correct defendant. If only the official-capacity officer is
        named, it would be proper for the Court upon request to dismiss the officer and substitute
16      instead the local government entity as the correct defendant.

17       Plaintiffs fail to justify redundancy to name Chief Dyer in his official capacity in the (second)

18  negligent hiring, training, staffing and supervision cause of action given that the City is also a defendant.

19  As such, this Court DISMISSES Chief Dyer in his official capacity from the (second) negligent hiring,

20  training, staffing and supervision cause of action.

21  **Merits Of Third False Arrest, False Imprisonment And Excessive Force Cause Of Action**

22                      ***Vagueness***

23       The complaint's third cause of action is against the City and Chief Dyer and the defendant

24  officers in their official capacities and is entitled "False Arrest, False Imprisonment and Excessive

25  Force."  Incorporating prior allegations, the cause of action alleges that the "City utilized numerous

26  officers to scare, intimidate and threaten Plaintiffs in a manner that was unnecessary and excessive, both

27  in the number of officers present with guns and the manner in which they conducted their investigation."

28  The cause of action further alleges that "detention was conducted with excessive force in violation of

Plaintiffs' rights under the U.S. and California Constitutions."

Defendants correctly note that the third cause of action's reference to "false arrest" is vague in that the complaint appears to characterize the events at issue as a detention.  Defendants further note lack of clarity whether plaintiffs, in particular minors Alexis and Charles, were arrested.  Chief Dyer challenges the cause of action for alleging no facts that he "caused" or directly "participated in" conduct to violate plaintiffs' civil rights.  Defendants' points are well taken.  The third cause of action is vague as to whether and how plaintiffs claim an unreasonable detention or false arrest.  Plaintiffs are granted an opportunity to replead the third cause of action with greater specificity to demonstrate whether and how they proceed on a unreasonable detention or false arrest theory and the grounds for Chief Dyer's liability.  This Court DISMISSES with leave to amend the third false arrest, false imprisonment and excessive force cause of action.

### The City's Liability

Construing the third cause of action as a section 1983 claim, defendants fault the cause of action's absence of a "cognizable theory or supporting facts" to hold the City liable for false arrest, false imprisonment or excessive force.  A local government unit may not be held liable under a section 1983 claim for the acts of its employees under a respondeat superior theory. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-

1  694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

2      Plaintiffs argue that the third cause of action alleges state law claims to which the City is immune

3  only if its employees are immune.  Plaintiffs point of California Government Code section 815.2(a): "A

4  public entity is liable for injury proximately caused by an act or omission of an employee of the public

5  entity within the scope of his employment if the act or omission would, apart from this section, have

6  given rise to a cause of action against that employee or his personal representative."  Under California

7  Government Code section 815.2(b), a public entity is not liable for injury resulting from the wrong of

8  its employee "where the employee is immune from liability."

9      California Government Code section 815.2 "makes a public entity vicariously liable for its

10  employee's negligent acts or omissions within the scope of employment."  *Eastburn v. Regional Fire*

11  *Protection Authority*, 31 Cal. 4th 1175, 1180, 80 P.3d 656 (2003); *Hoff v. Vacaville Unified Sch. Dist.*,

12  19 Cal.4th 925, 932, 80 Cal.Rptr.811 (1998).  However, liability of the employer only attaches if and

13  when it is adjudged that the employee was negligent," and, although "public entities always act through

14  individuals, that does not convert a claim for direct negligence into one based on vicarious liability."

15  *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1113-1114, 16 Cal.Rptr.3d 521, 547 (2004).

16      Nonetheless, "a governmental entity can be held vicariously liable when a police officer acting

17  in the course and scope of employment uses excessive force or engages in assaultive conduct."  *Mary*

18  *M. v. City of Los Angeles*, 54 Cal.3d 202, 215, 285 Cal.Rptr. 99 (1991).  "California cases have

19  consistently held that a peace officer making an arrest is liable to the person arrested for using

20  unreasonable force."  *Scruggs v. Haynes,* 252 Cal.App.2d 256, 264, 60 Cal.Rptr. 355 (1967).

21      The City's confusion over its basis of liability under the third cause of action highlights

22  plaintiffs' need to clarify its liability theories.  The FAC references government tort claims exhibits

23  which are not attached to the court-filed FAC.  If plaintiffs in the third cause of action proceed against

24  the City under a government tort claim, plaintiffs must better plead as much and clear confusion that they

25  do no proceed under a section 1983 *Monell* claim.  As such, this Court DISMISSES with leave to amend

26  the third false arrest, false imprisonment and excessive force cause of action against the City.

27                              ***Official Capacities***

28      Chief Dyer and the defendant officers argue that they should be dismissed from the cause of

12

1  action as redundant defendants given that the cause of action also names the City as a defendant.

2  "[W]hen both an officer and the local government entity are named in a lawsuit and the officer is named

3  in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke*, 954 F.Supp.

4  at 203.

5      Plaintiffs respond that they are entitled to pursue government tort claims against Chief Dyer and

6  the defendant officers in their official capacities.  Plaintiffs argue that Chief Dyer and the defendant

7  officers are properly named in their official capacities given the absence of dispute that they acted in the

8  course and scope of their Department employment at the time of alleged wrongdoing.

9      As noted above, plaintiffs are granted an opportunity to better allege that the third cause of action

10  proceeds as government tort claims.  As such, this Court DISMISSES with leave to amend the third false

11  arrest, false imprisonment and excessive force cause of action against Chief Dyer and the defendant

12  officers in their official capacities.

13              **Merits Of Fourth Cause Of Action For Violation Of California Statutes**

14      The complaint's fourth cause of action alleges that all defendants in their official and individual

15  capacities deprived plaintiffs' right to be secure in their person against unreasonable seizure to violate

16  California Civil Code sections 52 ("section 52") and 52.1 ("section 52.1").  The City and Chief Dyer

17  fault the cause of action for failure connect them to the alleged wrongs.  Plaintiffs respond that their

18  section 52 claims based on "treatment different from those similarly situated or were discriminated

19  because of their race.  All the Plaintiffs are black."  Plaintiffs argue that their section 52.1 claim is based

20  on prolonged detention without due process and probable cause.

21      Section 52 establishes statutory penalties for discrimination contrary to California Civil Code

22  sections 51, 51.5 and 51.6.  Defendants correctly note the complaint's absence of discrimination

23  allegations.

24      Section 52.1 permits a civil action against a person who interferes or attempts to interfere by

25  threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and

26  California Constitutions and laws.  Section 52.1 in intended to "stem a tide of hate crimes." *Jones v.*

27  *Kmart Corp.*, 17 Cal.4th 329, 338, 70 Cal.Rptr.2d 844 (1998).  "Section 52.1 does not provide any

28  substantive protections; instead, it enables individuals to sue for damages as a result of constitutional

1   violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996).

2       Defendants correctly argue that the fourth cause of action fails to satisfy section 52 or 52.1

3   elements.  The cause of action fails to allege facts of discrimination or interference with federal or state

4   rights to support section 52 and 52.1 claims.  Plaintiffs are granted an opportunity to replead the fourth

5   cause of action with greater specificity to allege section 52 and 52.1 elements and to identify which

6   defendants participated in alleged wrongful conduct.  This Court DISMISSES with leave to amend the

7   fourth cause of action for violation of California statutes.

8                                   **CONCLUSION AND ORDER**

9       For the reasons discussed above, this Court:

10  1.      DENIES dismissal of first cause of action Fourth Amendment claims against the

11          defendant officers;

12  2.      DISMISSES with leave to amend the first cause of action's Fourteenth Amendment

13          claims against the defendant officers;

14  3.      DISMISSES Chief Dyer in his official capacity from the second negligent hiring,

15          training, staffing and supervision cause of action;

16  4.      DISMISSES with leave to amend the third false arrest, false imprisonment and excessive

17          force cause of action;

18  5.      DISMISSES with leave to amend the fourth cause of action for violation of California

19          statutes; and

20  6.      ORDERS plaintiffs, no later than April 2, 2008, to file and serve a second amended

21          complaint which complies with this order.

22      IT IS SO ORDERED.

23  **Dated:    March 12, 2008**              /s/ Lawrence J. O'Neill
24                                         UNITED STATES DISTRICT JUDGE

25

26

27

28

14